12-790 USA v. Bryan Coffman Arguments must proceed 10 minutes for each defendant and 30 minutes for the plaintiff. And there are three defendants that are in this case.  The second defendant is the plaintiff. And Mr. Goodwin and Mr. Coffman may proceed. May I please the court? Good morning. My name is Michael Goodwin. I represent Bryan Coffman. We have, in our brief before this court, put forth a number of issues that we believe merit reversal of Mr. Coffman's conviction. For purposes of today's oral argument, I have four issues which I have prepared comments on for your honors. The first would be that all the convictions in this particular case relating to Global Energy Group must be reversed because those counts required extraterritorial application of Section 10B in violation of the recent Supreme Court decision in Morrison. Secondly, the trial court denied Mr. Coffman, through his attorney, the right to fully cross-examine his co-defendant, Mr. Sapskin, about the range of punishment that he was facing in the particular case in the United States. Thirdly, the trial court improperly admitted a hand truck full of bank records without proper authentication or certification to satisfy the exception of the hearsay rule. And finally, the government's expert in securities law improperly testified that the actions of Mr. Coffman subjected him to criminal liability. As to the Morrison issue first, there are two issues before the court. I believe first the court needs to determine whether or not the holding of Morrison, the presumption against extraterritoriality applies in criminal cases. I don't believe there's a Sixth Circuit opinion on point. However, I believe it's clear from Morrison that there are courts of appeals that have held that. There are, Your Honor. Just recently, the Second Circuit, in a case called Villar, held that it does apply in criminal cases. It seems like there are several cases out of the Second Circuit, and I think their analysis would be applicable here. Because many of the same arguments that are made by the government against this presumption applying in criminal cases were made there. First off, in the case of Morrison itself, the court didn't make any distinction between civil cases and criminal cases, and I believe it would be improper for there to be essentially two separate interpretations of one statute. If it's good enough for the civil law, it's good enough for the criminal law. It would be confusing if we started to have separate applications or separate interpretations of the same statute based on whether it's a criminal or a civil application. Couldn't there be policy reasons for having a broader reach for criminal law? I don't know of any, Your Honor. I would suggest that the same policy reasons would apply in a civil matter. The policy reason against the presumption is that while certainly the Congress makes laws to protect against the United States, it doesn't, I think, to paraphrase some of the cases, it doesn't enact laws to rule the world. The same policy concern would be applicable here. As Justice Story put it, and they quoted this in the, I think it's perhaps Coyble case in the Supreme Court recently, no nation has ever yet pretended to be the custis morum of the whole world, and that same policy concern would indicate that the law shouldn't apply extraterritoriality in criminal cases like they don't in civil cases. Secondly, in the Bowman case, which is cited by the government, in fact, from way back in, I think, 1924, that case itself, they said that in situations, in crimes against private individuals or their property, like assault, murder, burglary, larceny, robbery, arson, or frauds of all kinds, the crime must, of course, be committed within the territorial jurisdiction of the government. So Bowman itself indicates that against these types of crimes, there's no reason to apply extraterritoriality. Perhaps what Your Honor was hinting at, now that I think about it, in Bowman, what if there was a right for the government to defend itself, such as the crime in Bowman where they'd actually contracted, or there was a crime against a company owned by the government, then the United States government would have the right to defend itself extraterritorially, and therefore it didn't apply in the Bowman case. After the court determines that, the court would then need to assess whether there was any, whether the sale of the securities occurred in the United States or abroad, and here it certainly was not a domestic transaction. The office was in Canada, the salesmen were in Canada, the buyers were in Canada, the purchases were completely interacted in Canada. The government's argument is that, well, eventually after the sales were completed, the money was sent to an escrow account of Mr. Kaufman's in Kentucky. That would be similar to suggesting that if I went to a store and purchased something here in Cincinnati on Main Street in a particular store, used my credit card, well, eventually funds may go to Connecticut or to Dallas or wherever the credit card business is, but no one would suggest that the transaction was not completed in Ohio. But couldn't there be various aspects of the fraud that would be occurring in the U.S. if the bulk of the transaction was in Canada? Well, I guess there could be peripheral action, but that was even the case in Morrison, that there was some peripheral activity afterwards that occurred in the bond as to whether or not it's extraterritorial. For example, in the second case of Villar, the court looked at where both the buyer and the seller incurred absolute liability. Here that would have occurred in Canada when they had the contract that was signed for the purchase of securities. At that point, both parties have contracted, both parties have incurred liability for their side of the bargain, and the transaction is complete. If you are correct on this, does this affect only the global energy account? It does, Your Honor. It does. Time is flying by, so let me talk about another issue briefly that would affect all those, and that would be that the expert in this case, Mr. Warren, was permitted to opine that the actions of Mr. Kauffman established that he was subjected to criminal liability. Essentially, he was able to say as an expert, here's the standard of law, he violated the standard of law, he's guilty, and that goes far beyond what an expert is permitted to do. In fact, the risk of violation here is where Mr. Kauffman was an attorney, and this court found the danger in the case of Bennett versus Durham, where it recognized that we have to carefully interpret these securities registrations, because otherwise it might expose securities professionals, such as accountants and lawyers, whose involvement is only the performance of their professional services to liability, even though the buyer does not, in any meaningful sense, purchase the securities from those people. That's exactly what Mr. Kauffman was doing here. He was performing legal services for this client, and it's improper to impose criminal liability on him for any actions of this client. Thank you, Your Honors. May it please the Court, I'm Brian Johnson. I also represent Brian Kauffman. I've reserved three minutes for rebuttal. This past Monday, two days ago, marked the fifth anniversary of the government's filing of a civil forfeiture complaint against most of the assets involved in this case, and I think that's significant, because with respect to this appeal, appeal number 6090, timing is very important. What we have here in this appeal are interests in real property that Brian Kauffman transferred to his wife, Megan, in December of 2007. That was ten months before the government filed that civil forfeiture complaint. It was several months before they even opened their investigation of Mr. Kauffman. The transfers took place two years before Mr. Kauffman was indicted, and transfers took place almost three and a half years before he was convicted. And all of that is significant in light of this Court's decision last year in U.S. v. Erpenbeck. That's a case in which Judge Sutton was writing that opinion, and he relied heavily, Judge Moore, on the opinion you authored in U.S. v. Parrott, finding that substitute assets should be treated differently than assets that are part of the criminality or proceeds of criminality. So what we know from Erpenbeck is that Relationback does not apply to substitute assets in the Sixth Circuit, and the Court in Erpenbeck actually explicitly rejected the application of Relationback that U.S. v. McCann had applied in the Fourth Circuit. So what we know from Erpenbeck now is that the government cannot acquire an interest in substitute property unless the defendant has it at the time of its conviction. So assets a defendant has at that time that have no link to criminality could be subject to forfeiture, provided the government meets one of the requirements of 853-P1, but assets that are transferred prior to conviction, and in this case several years prior to conviction, cannot be considered substitute property. They're not property of the defendant as required by 21 U.S.C. 853-P2. If they're not property of the defendant, how can the And I think there are a couple of reasons for that, one generally and one particular to this case. Forfeiture, as we know from Libretti and a host of cases that have come since that time, is part of a defendant's sentencing. In this case, Brian Kaufman, of course, is a convicted defendant. So with respect to these forfeiture issues we're talking about, we're technically talking about part of his sentencing. So for that reason we believe Mr. Kaufman does have standing for this issue. That's what the court in the U.S.V. Liquidators case out of the Ninth Circuit held, and also U.S.V. Surgeons out of the Eastern District of New York. But you're saying that it's not his property and yet he can challenge it in his sentencing? That's correct, Your Honor. And what we're challenging... Logically that seems hard to understand. Well, it goes to what we're challenging here. So what we are not arguing, and this is what the government has suggested, we are not arguing Megan Kaufman's interest in the property. Brian Kaufman is not advancing an argument under 21 U.S.C. 853N. Those are petitioner's claims under that particular statute, and that's not what we're talking about here. What Mr. Kaufman is challenging on this appeal is the fundamental and fundamental sense that these assets are subject to forfeiture at all. And with respect to that issue, if Mr. Kaufman doesn't have standing to challenge it, then truthfully nobody does. But we would end up with... Why doesn't Megan have the ability to challenge it? She doesn't have the ability to challenge it at this stage of the proceedings. She would have an ability to challenge the forfeiture of those assets in an ancillary proceeding. So why isn't that enough? And that's been done also as of March. But I think the problem with that is we end up with a situation and a scheme in which nobody is able to challenge what the government is doing. No, but we just established that Megan could because she's the owner of the asset as of 2007. That is correct. But no one could challenge it at the initial threshold part of a forfeiture. So for determining whether the asset should be part of a preliminary order of forfeiture, if Mr. Kaufman doesn't have standing to challenge the government with respect to whether it's met its burden of proof, nobody can. So what would happen, and what did happen in this case, is the asset goes into an amended preliminary order of forfeiture, and then months go by before anybody can challenge it. So you do have an impairment of property rights, not Mr. Kaufman's, but someone's. And really nobody's there to contest it. Your theory is that Megan, the owner, cannot bring an immediate challenge to the preliminary forfeiture? That's correct. That is correct. Is there some requirement, some regulation law, whatever that prohibits her from immediately challenging it? I think there are a number of cases that say, and in fact there's one from this circuit, U.S. v. Kristunas, I believe it was, which I think was a case you said on Judge Batchelder. But at any rate, a third party can't challenge what's going into a preliminary order of forfeiture at that stage. Instead they have to await the So who brings the ancillary proceedings? Petitioners having interest in the property. So Megan Kaufman, for example, filed a petition in this case. And is there some reason for the delay of the ancillary proceedings other than getting prepared? You know, what Rule 32.2 provides is that it should happen as soon as practicable. And I think the In this case that didn't happen. And in many cases that doesn't happen. Because what happened here is the government requested actually quite extensive discovery in this case. So we had, we did have an ancillary proceeding, but it was not until March of this year. Standing here today, we still don't have a final order of forfeiture. And I'm not suggesting to the court that that's the I represent Megan Kaufman as well in that proceeding. But in this case and in others that we've seen, the Gallium case would be another example. The ancillary proceeding happens a considerable amount of time after the preliminary order is entered. But the fact that it goes forward at all sort of undercuts an argument that no one can challenge this if Kaufman can't. But the problem with that, Judge Guy, I would say, is that Megan Kaufman certainly does have an ability to challenge the forfeiture, but it's really not on a timely basis. And frankly, this is the poster child of that argument. Because there's been an inordinate delay in getting to that second part of the process. What this appeal really is about is whether that second part of the process has to happen. And I suppose more fundamentally the issue is, does the government, with respect to these substitute assets, even have a burden of proof? Even have a burden of proving that they're subject to forfeiture in the first instance? Because what we've got here is a situation in which the government acknowledges that these are substitute or says they're substitute assets, acknowledges the holding of prior to conviction, they can't be treated that way. But yet says, District Court, we will prove to you at some point, not yet, but at some point, that these were transferred fraudulently, such that they should be set aside, come back to Brian Kaufman, and be treated as substitute assets in that respect. Wouldn't those issues be thrashed out in the ancillary proceeding? And they have been at this point to some degree. But I think what's missing from this particular appeal in this particular case is the threshold issue of whether the government has to meet its burden of proof at all. It's really a two-step process. So the government has to prove by preponderance of the evidence that the asset is subject to forfeiture. If it does, it goes into a preliminary order of forfeiture. And then that starts the process for getting to an ancillary proceeding. It's that second part where third parties can come in later. And I think conceptually it's supposed to be very near in time, but practically that doesn't always happen. That's the part where the third parties can come in and argue it. But in the interim, you're looking at a period of months or even years to go by before that can take place. So all Mr. Kaufman's really saying in this case is the government has to be put to the test of meeting its burden of proof on this initial element. Okay. Thank you. Thank you. Good morning. May it please the court. My name is Jared Beck. I represent Mr. Milby. And before I begin my argument, I just want to acknowledge for the record that Mr. Mike Murphy actually was appointed to represent Mr. Milby at both the district court and the appellate levels. Unfortunately, he's experienced some health issues recently. So he asked that I stand in for him today. And I appreciate that opportunity. Given the time limitations, I'd like to really focus on the issue that I think is most concerning from Mr. Milby's perspective, which is the seizure of documents from Mr. Kaufman's law office and then the district court's subsequent application of the crime fraud exception to eliminate the privilege that potentially could have applied to those documents. By way of background, just to review, law enforcement, by virtue of a search warrant, seized almost all of the documents that were contained in Mr. Kaufman's law office. And of course, Mr. Milby was a client of Mr. Kaufman. Rather than actually submitting materials to a special master, the government decided to employ a taint team. And the team was comprised, of course, of attorneys from the U.S. Attorney's Office in the Eastern District of Kentucky, but also some support staff members as well that work in that office. And I think this is where the problem begins to arise. From the beginning of litigation in this matter, the Assistant United States Attorney, who was the lead trial attorney in the prosecution of Mr. Milby, admitted that he reviewed a substantial number of seized documents long before the district court or any other special master, even the defendants, had an opportunity to review them to make assertions. The Assistant United States Attorney, who was the lead counsel at the trial, indicated that this was his standard operating procedure. This happens regularly in cases where a taint team is employed. In fact, the taint team turned over 39,154 of the 42,103 total pages of documents that were seized from Mr. Kaufman's law office. And this happened before the defendants had an opportunity to review the documents, before they had an opportunity to assert any claims. That's almost the entire universe of documents that were seized. The taint team decided to make a disclosure to the trial team, again, without following any of the guidelines that are promulgated in the Department of Justice's memorandum that describes the requirements that Assistant United States Attorneys who are involved in cases where taint teams are employed should follow. Were any of these attorney-client-privileged documents actually used at trials, and does that matter? I think that it would matter. My concern is that it's a two-part problem. Once the government had access to these documents long before it continued their investigation, returned to the grand jury, sought a superseding indictment, my concern is that also once we started to litigate each individual document with regard to whether or not the privilege applied and the crime fraud exception applied, it is our position that the district court's rationale and methodology was flawed. We believe that it's a two-part examination that must occur to determine whether or not the crime fraud exception applies. The first step would be that the government has to make a prima facie showing that criminal activity actually potentially could have occurred, and then also as a second step, each individual document, the government is required to show some type of connection to that crime. But in fact, whenever we were in the process of litigating each individual document, Mr. Murphy requested that the court make on the record findings establishing the connection between the alleged crime and the document. And the court indicated that she'd already made the finding that criminal activity had occurred, and that it was the defense attorney's responsibility to develop the record, and in fact, requested that the defense attorney's explain why it is that the crime fraud exception should not apply. We believe that that is not the procedure that has been authorized by this court. It's kind of a burden shift to defendants. Well, suppose that we were to think that the wrong procedure was used. What's the remedy given that none of these documents were apparently introduced at trial? Well, again, my concern about agreeing that none of the documents were used is that had the procedure been followed properly, some of the documents that were determined to be non-privileged or to not be subject to the attorney-client privilege by virtue of the crime fraud exception very well could be found to be privileged. Give us, if you could, is there an example that you would point us to as one of the worst examples of a document that was misused by the government that prejudiced your client? Again, it's hard to pinpoint specific documents because I'm unsure that the judge's rulings with regard to the privilege were correct based on the procedure that she followed. I think the entire process was flawed. I think that the remedy would have to be remanding the case, relitigating the crime fraud exception issue with regard to the documents, using the proper methodology, and then proceeding again with the trial. Doesn't that assume that some of these documents then were used at trial? There were documents used at trial. There's no doubt about that. There were documents used at trial that could be implicated by relitigating this issue. For me to point to a specific document is difficult. As I said, I think that the way that the procedure was handled was inappropriate. I think that if we were to relitigate, we may find that some documents that did come in could very well have been privileged. Are there any cases that we have decided, the Sixth Circuit, that would suggest that this approach that was used to have the internal taint team and not to use the special master is improper? I will note that this court has recognized in a number of different cases that a taint team is not preferable to a special master. In fact, I would cite Enright grand jury subpoenas, the Sixth Circuit 2006 case, where the court specifically noted that a government's taint team review of documents is far riskier to privilege than is a judge's in-camera review. Also, taint teams present inevitable and reasonably foreseeable risks to privilege where they've been implicated in the past in leaks of confidential information to prosecutors. Also, an acknowledgment that I think is very true, there is an inherent conflict of interest. The government's taint team may have an interest in preserving the privilege, but it also possesses a conflicting interest in pursuing the investigation. In human nature being what it is, occasionally sometimes people make mistakes or violate their ethical obligations. I do acknowledge that Mr. Grant noted in his reply that in a sense, my argument or our argument would potentially require maybe a Castigar-like hearing, and this court has ruled that issues of attorney-client privilege communications do not necessarily implicate the full reach of Castigar. But given the fact that these documents were seized and were not turned over to the defense for 16 months, and that the government proceeded to continue with its investigation, pursue another indictment, I think it's highly probable that some of these documents that were used derivatively to continue the investigation, which I believe could potentially establish some type of prejudice on behalf of Mr. Milby. May it please the court, John Grant for the United States. Starting with the taint team argument, this court held in the Warshak case that the defendants are required to prove, they have the burden of proving that there was direct use of privileged documents at the trial. And Milby's counsel has just about admitted that that never happened. It's important to note what Chief Judge Karen Caldwell did below in trying to protect the privilege. She had four day-long hearings in which every objection to every document that the defendants raised, she reviewed each one of those claims. And after reviewing each one of those documents, she only determined there were a handful of documents that were either protected by the privilege or were not covered by the crime fraud exception. Now your opponent seems to be arguing in part that the district judge flipped the burden. Once she said that in general the crime fraud exception applied, but then she said it was up to the defendants to counter that. How would you respond? Well, the United States disagrees with that, Judge Moore, because at the hearing there was a document by document review. And a lot of the argument was about whether the lawyer defendant, Mr. Kaufman, whether he was actually involved in the fraud. And post-conviction, I don't think there's any question about that. This is a gentleman who was very much involved in the fraud. So when the government received permission from the court to go and seize documents from his law office, and these are documents that the government then admitted to prove the fraud, then of course the communications between Mr. Kaufman and his client, Mr. Milby, were covered by the crime fraud exception. But this court indicated in the case just discussed, the NRA grand jury subpoenas case, that although the taint team would be inappropriate in the context of getting documents to the grand jury, in dicta the court said that the taint team procedure is appropriate and is respectful of the privilege and not injurious to the privilege in the case. So the defendants complained, well, this wasn't fair because why didn't they take all these thousands of pages of documents either to the court, to the master judge, or ask for a special master? Well, the defendants knew right away after the search this was the procedure that was going to be used, and they never objected to it. They had a remedy to go directly to the court and say, judge, we think that these documents should be given to a special master. Now, what happened, the United States was not at all careless in the procedure that it utilized in the taint team review. The taint team review was conducted by attorneys that were not affiliated with the prosecution. They were in satellite offices, not in the main office where the trial team was located. They separated all the documents into three categories. Documents that they believed were covered by the privilege, documents that they thought were possibly privileged, and then documents that they thought were not privileged. And the documents that they determined were not privileged, those were given to the prosecution team. All categories of all documents were given to the defendants. The prosecution team then looked at the documents that the taint team had determined were not privileged, and then they decided which ones of those documents they were going to seek admission at trial. Then the defendants objected to nearly every document and urged Judge Caldwell to exclude them as protected by the privilege. Then Judge Caldwell, in these lengthy proceedings, reviewed each document individually and made her findings that either they weren't covered by the it was a very careful review process. But regardless of the process, the Warshak case says the defendants had the burden to demonstrate that the privilege was damaged somehow through the admission at trial with privileged documents. Well, the defendants, we know what all the exhibits are at trial. Many of them are filed in the appendices that we file electronically with the court. If there is some claim of any possible privilege or some claim that the crime fraud exception doesn't cover it, then they have every opportunity to do that. The court made its finding. They do not allege in their brief or today in oral argument that any of those findings are erroneous. So I really don't think there's any claim here because there's no showing of any breach of the privilege. And this court also said in the Warshak case that the government does not have to prove that there was no derivative use. That's clear. In the Warshak case, this court said that. Now, the derivative use would come in the context only when there was compelled testimony, which did not happen in this case. Now, discussing the issues that Mr. Kaufman raised, the Morrison issue, there is some divergent opinion among the lower courts regarding whether Morrison applies in the criminal context. I do not know of any Court of Appeals opinions. The divergence of opinion is in district court opinions. There is a district court opinion that we cite in a brief from the District of Columbia which categorically says that Morrison does not apply in criminal cases. I think if that is the case they cite in their reply brief, it is a district court opinion. I may be incorrect. I did not see any Court of Appeals opinions. There could be something recently, but I checked recently. I didn't see any. But in the Morrison, the facts in Morrison were there were Australian plaintiffs who sued an Australian bank and American defendants in the United States courts. In that case, all aspects of the purchases occurred outside the United States. The Supreme Court said to prove a violation of Section 10B of the Securities Act, the focus is not upon where the deception occurred. The focus is on only where the purchases and sales occurred. To bring a case in the United States courts, the plaintiff must show that there was a purchase or sale in the United States. For example, if these securities that were sold on foreign exchanges had been sold on the New York Stock Exchange, then Morrison wouldn't bar that lawsuit. Whether it applies or not in this case, this court doesn't need to address that issue. Because even if Morrison applies, then it's not fatal at all to the securities fraud counts in this case. And that's because the purchases did take place in the Eastern District of Kentucky. The global central bank in Lexington, Kentucky, an account that the defendant, Brian Kauffman, controlled. So the actual sale did take place in part in the United States, which is why the corresponding wire fraud counts, there was jurisdiction in the Eastern District of Kentucky because the wires were to the bank in Lexington, Kentucky. This was an account that all the transaction and all the fraud occurred only in Canada is not correct. The argument relating to the expert testimony, the complaint is that the expert talked about criminal liability. Well, what was not discussed was that was a question that Brian Kauffman's attorney asked the expert. He asked the expert, quote, simply because someone does that, whatever they were talking about, simply because someone does that, that doesn't subject them to criminal liability because someone else did it, does it? And then the expert said, well, you know in my belief it does. This court has said that if you elicit testimony, you can't then claim on appeal that the testimony that you yourself elicited is wrong. So the question about criminal liability came from Brian Kauffman's attorney. And that's the only statement to that effect? Yes. Yes, that was the only statement and he answered the question. Of course, he didn't object to his own question because he asked it. So he is barred from arguing that to this court since he's the one that actually elicited the testimony. Regarding the forfeiture issue, this court stated in the Urban Vet case that the ancillary proceeding is the sole avenue for a third party to assert their interests. Now, Brian Kauffman's second attorney, what he's complaining about is that somehow we didn't meet some kind of burden to show that Brian Kauffman owns these substitute assets. The way the forfeiture law is set up in determining the preliminary judgment, the United States is only taking assets owned by the defendant. We're only seizing his assets. Now, he claims that these assets have been transferred to Megan, and so his argument seems to be circular because he's saying I don't have an interest, yet somehow I have standing to assert that I don't have an interest. Well, if he doesn't have an interest in the substitute property, the United States has acquired nothing from him. If he has an interest, we have acquired only his interest and nothing else. Now, he claims that prior to the indictment, all these assets were transferred to his wife. And, of course, in the ancillary proceeding, Megan Kauffman is arguing that those were not fraudulent transfers, and the United States is arguing that, yes, they were. Now, if she loses that and if Judge Caldwell makes a factual determination that they were fraudulent transfers and, therefore, the United States is able to acquire all the assets because she doesn't really have a valid interest, then she certainly can appeal that. And her attorney below, who is this gentleman here, can then come to this court and raise the arguments that he's raising now. And the interesting thing is that even if Brian Kauffman did transfer those assets to his wife, then the fact that he's still married to his wife, he does have some kind of marital interest in those properties. So at a minimum, the United States has acquired whatever that interest is. And to a maximum, we hopefully have acquired the entire property because we're going to meet our burden in the ancillary proceeding. So basically, Brian Kauffman is jumping the gun. Arguably, he's arguing for his wife in this proceeding, and he doesn't – he should not have any standing to do that. So what is your position about the relevance of the Erpenbeck case? Well, the Erpenbeck case, the relevance of it here is simply that the court said that the sole avenue for a third-party claimant is through the ancillary proceeding. But that only applies to Megan. Or to any third-party. It's not because – We don't know of any other third-parties here. Well, there are some other third-parties. Megan – there are some corporations that own property that Megan was the major or sole shareholder of. There's a condominium in South Carolina that the government seized that was part of the money laundering conspiracy. And that condominium on paper is owned by Megan's sister. So she would have a claim as to that. And there are third-parties. Yes. And so in the ancillary proceeding, we're trying to count off all those claims and say that the government is entitled to seize those assets in the entirety. So the Erpenbeck – most of the Erpenbeck really has no application here because in Erpenbeck, there was a huge amount of money that was discovered that was buried in the golf course. And so the government then sought to seize that. The defendant had already been incarcerated and convicted, and the government sought to seize that money. And the issue was whether creditors in the bankruptcy court were entitled to have a claim to the money. And this court ruled that the United States did not give them adequate notice. But the court then said on remand, the sole remedy is to go through the third-party ancillary proceeding. I mean, this court can imagine if we were required to go to court and to get a substitute asset, we were required to disprove at the time of getting the interest of the defendant that no other party owned that, that really is bringing a third-party ancillary proceeding into the preliminary proceeding, which is completely inappropriate. And it violates what Erpenbeck says and what Erpenbeck holds. There are a lot of other issues. There are actually 20 issues that the defendants have brought to this court. And I would very much like to discuss any of those issues if the court has any questions about those. If not, we'll be happy to rely on our brief. Mr. Kaufman's counsel indicated an intent that he didn't have enough time to get to it. He talked about the bank records. And I would like to, it is of some concern to me how those records were authenticated. They point out in their brief that the records were not self-authenticating. And we admit that's true. So we could not use the rule of evidence to actually present the document as self-authenticating. We did not do that below. But this court has held, and many other courts, that to prove authenticity, of course, we have to just prove that the document is what it purports to be. And this showing can be made only with, quote, some competent evidence. And it can be shown strictly through circumstantial evidence. The official appearance and contents of bank records represent circumstantial evidence that the documents are what they purport to be. Here, there are two groups of records. There are records relating to the first part of the fraud, which is the Mid-America record. Bank records relating to the Mid-America company. And then there were records relating to the global Canadian part of the fraud, which were the bank records for that company. Now, with the Mid-America, the testimony was that the Securities and Exchange Commission had acquired those records through a subpoena. And the bank records that they acquired, the reason that they asked for subpoenas for those accounts is because they had received checks, the SEC had received checks from complaining investors who had lost money, showing checks that they had mailed to Mid-America. And, of course, the SEC then looked on the back, and that's where they got the account numbers. So that shows that these records related to the fraud because we knew that these were valid checks that had been returned from the bank showing that the deposits had gone through these accounts in Kentucky. The bank records looked like bank records. They had the appearance of bank records. Several of the records had Brian Kaufman's name and address on them. And very importantly, all these records were completely consistent with the rest of the testimony and the rest of the case. So when a witness said, I wired $111,000 to Lexington, there was an entry in the bank records that said it was $111,000. So all the money flows in the records tied into the rest of the proof. With the global records, there were signature cards that were produced by the bank, and there was a witness who was familiar with Brian Kaufman's signature and said that was his signature. That was another way to prove they were authentic. So certainly there was competent evidence, and there was circumstantial evidence for all these things. And typically, of course, what happens is we have the procedure where we have the certifications in it, and it's done without any objection, and they're self-authenticating. Part of the problem with this case is that the Securities and Exchange Commission had begun a lot of this investigation. Of course, they were not handling the criminal matter, and they were strictly trying to eliminate these folks from trading securities. When the United States inherited the case, then we were already in the position of dealing with how they had acquired the documents. So we were not able then for us to actually get certifications. We would have had to have gone back and re-subpoenaed all the documents, get certifications, and that would have been a lot of resources to do that. Of course, when we ask for documents from banks, the United States is required to pay the bank for all the documents, and we already had all the documents. But couldn't you have had someone from the bank just appear and say, yes, these are in fact the records from our bank, and they represent what they purport to represent? That could have been done, Judge. There were several accounts, several banks. Yes, that could have been done. We do admit that, yes. In other words, we could have eliminated this from being an issue. There's a troubling case out there from several years ago in which we said, you have to do something better than just produce a bank officer who says, yeah, we've always held ourselves out as being an FBIC bank, and we've had this stuff that said we were, and there isn't anything that says we aren't. And we said there has to be something more than that because FBIC status is an element of the crime. It's a little bit different from what we're dealing with here, but it did seem as if we were saying if you're going to introduce something of this fundamental nature, you may have to go to some extra trouble and expense. Well, I would agree with that, but I think that that is a different context because that would be an element of defense. I agree it's a different context. Because importantly, one of the factors in proving circumstantially that the documents are authentic is the fact that the defendants do not claim that they were not authentic. That's actually a factor in circumstantially proving that they're authentic. And, of course, the defendants are not claiming that. They're not claiming that the documents were not authentic, that the documents were not. Did they object to the introduction of the net trial? Yes, I think they did, yes, and the court admitted them. And so the standard review would be abuse of discretion. I understand that part of their objection was that a hand truck full of these documents were introduced and that they did not have the opportunity to go through those documents because they were introduced at trial, they were brought into trial, and the lawyer was having to pay attention to what was happening at trial and hadn't had an opportunity to know which of the documents were going to be used. Could you respond to that, either to tell me that my recollection is wrong or respond to that? Well, I don't recall that being an issue that they raised in their brief, but certainly they had every opportunity during discovery to review all the documents. And the documents themselves were not, if they were introduced, but they were summary proof actually. That's what the jury heard. So even if the documents were introduced, they didn't really need to be introduced because we actually used summary testimony from two financial analysts that explained all the money flows and there were charts and that kind of thing that were admitted. So what the jury heard was the summary proof. That's what, because the documents themselves were not that accessible to the jury in terms of going through them and understanding them without summary proof. So the documents themselves were not used, but they were brought in? I think that they were actually admitted, but in terms of, as exhibits, but in terms of what was presented to the jury in terms of testimony, they were summary evidence where two different financial analysts explained the flow of money. They explained how much money came in from the different investors into the bank accounts and then how much money landed in the defendant's pockets, where the transfers of money occurred in terms of supporting the money laundry, how the condominium was purchased, how the yacht was purchased, how money was hidden from the investors and put into an investment account that Megan Kaufman controlled. So if these documents were not properly authenticated and if the remedy were to exclude them, would that be significant to this case? I would argue it wouldn't be because as a matter of law, the United States can present summary proof without admitting the underlying documents. Was the summary proof objected to? Yes. Well, the two analysts who testified, there were objections to two portions of their statements alleging that they were given opinion testimony and as to those two statements, the court sustained the objection and then the rephrase question was not objected to. That's actually one of the arguments on appeal that these two analysts gave opinion testimony. But I guess I'm asking really was there a specific objection to the use of summary testimony rather than the Hancher-Fuller documents as the basis of the analysis? I don't believe so, Judge. I don't believe so that there was any objection. The only objection was as to the nature of two specific questions relating to opinion testimony. This is almost a classic case of why the rule exists for summary experts to testify. The number and nature of the documents cry out for explanation. Yes. The case was extremely complex. The district court record exceeds 10,000 pages. It's a three-week trial. It would be very difficult for a jury to understand this evidence without having summary proof and having financial analysts go through all of the money flows. If there are no further questions about any other issues. There are not. Thank you. Your Honor, I believe the complexity of the case is the reason for the prejudice with these documents. With these bank records, there was a Hancher-Fuller. Defense objected to them coming in. They also objected to the summary. Initially, the government proposed this super huge chart with all these little diagrams. We couldn't even read it when we received it. Saying that this money went to here, and then it went to here, and then it went to here, and then it went over here. That was excluded. That chart was excluded. What happened to the hand chart of the record? They were admitted into evidence. Did the jury look through them? Correct. I don't know what the jury relied on in their deliberations, but they were admitted into evidence as an exhibit. The jury had access to them, could have focused on whatever bank record they wanted to in the jury deliberations. So the jury had them back in the jury deliberation room. They were not just physically, here's a bunch of records, kind of thing. I wasn't in the jury room, but I assume so. They were admitted as exhibit. Were all those sent in, or was it an instance which happens frequently that if you want something, ask for it, and we'll send it to you? Because sometimes when there's this volume of stuff, they just don't send it in. The bank records? Yeah. My opinion is that some bank records were produced. There was no indication just prior to trial, within the week or so before, I believe it was, when defense learned, we're going to admit these 50,000 pages of bank documents or whatever it was, 10,000 pages, I'm not sure of the number, but it was a lot. So the court excluded this massive chart, but then allowed in the bank records, and on the fly, the government came up with these other summary charts. So while trial is going on, their expert says, oh, well, our big chart is excluded. Let me make some little charts purporting to track these monies through these different accounts so that we can create this impression for the jury that there was some shenanigans going on with the financial accounts. And you object to that? Yes, and that occurred, and that was basically the makeup once the large chart was excluded. And the district judge allowed that? Right, those charts came in through the testimony of the... You raised that on appeal as an issue? Yes, well, I mean, I don't know that that is a specific issue. We objected to the opinion testimony of those individuals. What they were is analysts, and certainly analysts could come in and say, this amount was deposited. But what these analysts did, which was different, was these analysts tried to say, well, let me show you where this money went. It went here, and then I traced it, it came over here, and then it went back over into this account, and that's improper. And that's more than simply stating adding up numbers or saying a mere summary. That's providing some type of expert opinion without proper basis and without proper notice to the defendants. And we did object to that, and that's one of the issues we raised on the brief. But the question that Judge Guy was following up on was the point that sometimes when you have a truckload of documents, the jury might not take all of them back to the jury deliberation room, even though they were admitted as exhibits. They might be left sitting in the courtroom. And do we know from the record here whether the jury had access to all of the hand-trapped records? I would assume they had access as to – I don't know the answer, Your Honor. I mean, I'm assuming because they're admitted as an exhibit, and therefore, we're not able to – I mean, I think the law is fairly clear. We're not able to impeach the jury's verdict by what they rely on and what they didn't rely on. So I don't know if they actually – To the degree you're making an objection to the admission of evidence, isn't our review and standard of review for that abuse of discretion? It is, Your Honor. But one other thing I wanted to point out about that is that – and that is that it's not just the authentication issue here. It's the hearsay issue. These bank records were completely full of hearsay. And that's why under 803.6, that exception to the hearsay rule doesn't just say, and get them authenticated any way you can, government. It says to avoid the hearsay problem, you have to have these business records authenticated in a particular way, pursuant to, I think it's FRA 901.11 or 12. And that's the exception where you bring in the custodian of the bank, as Chief Judge Batchelor suggested, or a certification, and that rule, the hearsay rule, says those are the two ways you do it, to get around the hearsay rule. And the government did neither of those two things. And we don't know that the jury didn't look at it and say, boy, look at these big amounts of money that were going to an attorney. I don't understand how he could make this much money. He must be guilty or he must have been in on it. And that was the evidence throughout. The evidence that he was involved in the fraud was not evidence. It was the argument of the government. The evidence was that he provided legal advice. He looked at documents. He wrote some of the documents. He did some blue sky filings. He did the things that this court in Bennett v. Durham said were the typical work of a securities lawyer. And then they had Mr. Saskin come in, who had this deal that we weren't able to explore what his liability was, and he came in and said, oh, Coffman was in on it. And for saying that, his case was dismissed against him. And he received no penalty here, just at the Ontario Securities Commission. And then the other evidence was this expert that they had, Mr. Warren, who came in and said that not just the one quote that I talked about earlier, but also throughout his direct testimony as well, said, here's the standard, and the standard is what's set up by securities lawyers when we have our annual securities meetings and talk about these things, not an ethics rule, not a criminal statute, but those things. And a violation of those things is a violation of the law. He testified, here's what the law is. It's a violation of the law to violate these standards that we decide on at our meetings, and that imposes criminal liability. So it was really in defense counsel Mr. Roman's attempt to clean up the mess that Mr. Warren volunteered that in fact, no, it makes him criminally liable. Thank you. Thank you. I think one of the things that Mr. Grant said kind of drives to the point of my appeal in this case, and that is his statement, to paraphrase, was if the district court determines after the ancillary hearing that there was a fraudulent transfer, then Brian Kauffman has the property. And that's the whole problem. Because what they've done is punted the issue of whether this is property of the defendant as required by 853 P2 down the road. That's something they have to do at the outset to determine whether it's forfeitable at all. It doesn't go to the ancillary. That's a decision that has to be made before it goes into a preliminary order of forfeiture, and that's where they failed to meet their burden of proof. Why can't they say there should be a forfeiture of anything that Brian Kauffman has an interest in? They could say that, but they would have the burden of establishing that he actually has an interest in it. In the whole world. They have to revise essentially all third parties' interests? No, Your Honor. All they have to do is establish that he has some interest in it. And what we have here are properties of which he had no interest at the time of his conviction. There is no marital interest if Megan Kauffman has a will, and he had conveyed his interest through a quick claim deed to her in these properties that we're talking about. He had no interest at the time of his conviction. In fact, not for three and a half years before that time. So you're saying that if subsequently a fraudulent transfer is demonstrated, then he has acquired a new interest? I would have thought if a fraudulent transfer is demonstrated, it would show that he always had an interest. That probably would be the case. I think I agree with what you're saying. But if you take that, and that's part of the government's argument, I think, if you accept that, then what the government's saying is that Brian Kauffman has always had an interest in these properties. We'll prove later how this was a fraudulent transfer, but as a matter of law, he's always had the property interest. And if that is the case, then he certainly has standing to oppose the government's attempt to forfeit this property on the basis of what we're arguing here. But his main opposition is that he doesn't have it. And that's exactly what the defendant said in U.S. v. O'Dell, which is a case out of this court as well. And what the district court says is we've heard what the defendant has to say about the property, but I, the district court judge, still have the obligation to determine whether this is a forfeitable asset. So again, regardless of what Mr. Kauffman says, the district court had an obligation to determine initially, not after an ancillary hearing, whether this is forfeitable as substitute property. So you're saying that there would have to be an action brought for fraudulent transfer before there could be any forfeiture action taken? I believe there was, Your Honor. And what's your authority for that? My authority really is the statute, because in all the cases that refer to the government's burden, it has to meet its burden of proof somehow. And here what it did, and in fact this is a great example of why their argument should fail. Here what they said is, this is a fraudulent transfer, and it was because back in December of 2007, when these transfers took place, Gary Milby was under SEC investigation. And Mr. Milby was one of Mr. Kauffman's clients, and therefore surely Mr. Kauffman suspected that he would be investigated or maybe sued or maybe even prosecuted. And what the district court said to that is, that's not enough. That's not enough to establish that these were fraudulent transfers. But despite having said that, and despite Erpenbeck coming out in the interim during our briefing, they were included in the preliminary order of forfeiture anyway. So that's the problem we have. I think if you consider beyond this case, what would happen if the government's right, I question whether Erpenbeck has any meaning at all with respect to substitute assets. Because if the government can merely say, judge these transfers took place many years ago, but we promise we'll prove to you one of these days that they were fraudulent transfers, there's no point in talking about relation back with respect to substitute assets. It would be a meaningless discussion, and Erpenbeck would be a waste of paper on that issue. So I think that the government had to do more in this case. They had to meet their burden of proof. Doesn't that assume that once the government files the preliminary forfeiture, that that's sort of final and there isn't any defense to it? I'm sorry, I missed what you're saying, Your Honor. I mean, is it your position that if the government files the preliminary forfeiture, that's the end of it? With respect to the defendant's interest, if he has one, that's the end of it. It does, of course, go on to an ancillary with respect to third parties. Well, if there's no ability to show, for example, that this property was not involved in the crime, which is the basis for the forfeiture. What the government is saying is that this property was not involved in the crime. So they have specifically said, in fact, in the indictment, they said, these are substitute properties. And by their nature, substitute properties can have no connection to the crime. So what they're saying is, these assets, these properties, weren't connected in any way with the crime. They can see that point. Is there a difference between the substitute properties and property that you can trace as having been, you know, intermingled with other properties? Absolutely. Those are 21 U.S.C. 853A properties. The ones that are involved in or proceeds of a crime. 853P properties are substitute assets. And really, the whole discussion in Erpenbeck and in the prior opinion in Parrott, which did involve not a lump of cash but real property, was whether 853C, which provides the relation back doctrine, applies to substitute assets as well as those assets involved in or proceeds of a crime. So what this court has found through both Parrott decision and Erpenbeck is that that provision C, relation back, doesn't apply to substitute assets. Now, it certainly does to the other ones, the ones involved in the crime. And the government steps into the defendant's shoes at the time of the illegality with respect to those assets. But with assets having no bearing on the crime, no connection with the crime, that's where there's the disconnect. And the relation back does not apply. And I think I'm out of time unless you have other questions. Thank you. Thank you. Briefly, I just want to reiterate what I believe our greatest concern is about the tank team procedure that was used in this case. Of course, today we're concerned with Mr. Milby's substantial rights that were implicated. But really the larger issue is that the government has no real guidance from the courts about the proper procedure in a situation where they use a tank team. And in fact, in this case, they've already designed their own guidelines, Department of Justice has, and they didn't follow them. Again, here we have the seizure of every document from a lawyer's office. We have review by members of the U.S. Attorney's Office, including people who are not attorneys. We have disclosure of the documents that those people determine are non-privileged to the trial team prior to the defense ever having an opportunity to litigate the issue. Then we have 16 months that pass, during which an investigation continues, a superseding indictment is sought and returned. And then finally, we have the opportunity to get our hands on the documents. My concern is that given the due process implications that are at issue here, this case and the circumstances that exist in it give this court an opportunity to draw a line in the sand and say when the government uses a tank team, which we have already recognized is not the preferable means of dealing with potentially privileged documents, they have to abide by certain rules. They have to follow certain guidelines. Again, I think that... But you don't have any burden of showing specific prejudice? Specific prejudice, I agree, has to be established, as Mr. Grant acknowledged, by direct use of the documents at trial or in a grand jury proceeding. Of course, grand jury proceedings are secret. It's very difficult to prove that any document was used directly there. And at trial, I think, again, just to reiterate, the judge's procedure for determining whether or not a particular document is privileged was flawed. Therefore, it's very difficult to point to a specific document and say, this was used directly at trial, given that potentially the classification was incorrect to begin with. What objections did you make to the use of that procedure? That's a very good question. Of course, I wasn't the trial attorney at that time. Well, I mean, because the answer to that tells us what the standard of review is. And if, in fact, the answer is that you didn't, which I believe is what Mr. Grant says was the case, then we're looking for plain error. And the Taint Team procedure is something that, whether or not we think it's a good idea, it's certainly been used, and there's not much out there to say that just generically that constitutes a due process violation. I mean, we'd have to find that it should have been abundantly clear to the trial judge that she couldn't do this in order to come down on your side of this issue. I will say that counsel for Mr. Coffman, actually for Mrs. Coffman as well, expressed serious doubt about the legitimacy of this procedure. We had pretrial hearings to attempt to determine what exactly had been done to this point, because, again, we're 16 months after the fact, not ever having had a chance to look at the documents. I would assert that the fact that we proceeded in that manner should be considered at least some objection to the procedure. In the end, we proceeded as the court suggested that we proceed, but I don't believe that the process was appropriate. But didn't the trial judge actually make a ruling on each and every document that you specifically challenged? She did, and my concern with that ruling or with her rulings in that regard are that initially she made the prima facie finding that there was criminal activity that potentially occurred, and these documents could be in some way related. But in the end, when we're in the process of actually determining whether or not they are related, it was the defendant who was supposed to, I guess, rebut the presumption that they were. That is my concern. I don't believe that that follows the precedent of this circuit. Well, in regard to a document that is the defendant's document, either in his possession or generated by him, he is in the best position to demonstrate the problem with using that document. I agree with that. Mr. Milby, of course, did not have access to these documents. They were in his lawyer's possession, and then they were seized. And again, a long period of time passed before we ever had an opportunity to even review them. I do agree, though, that a defendant is in the best position to make some type of judgment call on whether or not something should be privileged. Of course, attorneys probably are better at litigating that particular issue or making a determination in that regard. Okay. Thank you. Thank you, counsel. The case will be submitted. There will be an interim warrant to come before the court this morning. You may adjourn.